## JAMES HARLAN *v.* WHITE & TRUFANT.

A second rule cannot be entertained, when one to the same purport and effect has been taken, acted upon and decided, unless for a new cause, arising after the first has been decided.

APPEAL from the District Court, Parish of Plaquemines, *Burthe,* J. *Charles N. Morse, for plaintiff and appellant.*—The facts on which this suit originates are not contested.

The plaintiff instituted suit in November, 1861, against White & Trufant for the sum of $2,332 76, with interest, and obtained an order of sequestration of certain property, situated in the Parish of Plaquemines, on which he claimed a privilege.

The writ of sequestration was executed by the Sheriff taking into his possession nine mules and twenty-five hogsheads of sugar, belonging to the defendants. On the 2d of December, of the same year, the latter came in and prayed that the sequestration be set aside, on their executing their bond according to law, which was ordered.

On the 27th of March, 1862, the defendants paid the amount of the claim with interest, to wit : $2,470 56, to Armand Lartigue, Clerk of the Court 1or that parish, and paid it in Confederate notes. No notice of this payment was given by Lartigue to the plaintiff or his attorney.

The latter, nearly a year after this payment, learned through Martin, the Sheriff, that the claim had been paid, and shortly afterwards called on Lartigue to account for the same.

Lartigue admitted having received payment from the defendants in Confederate notes, and offered to pay the amount in that description of notes. The plaintiff's attorney refused to receive Confederate notes, because they were then worthless, and their circulation prohibited by military orders.

At some subsequent period, when, does not appear by the record, Lartigue paid some two or three hundred dollars in current funds, and took receipts for the same. Here, whether on account of disturbance of the legal machinery, or for some other reason, the matter dropped for a time.

On the 19th of June, 1865, the Court was again in session in the Parish of Plaquemines, and Lartigue again the Clerk of the same, and on that day the plaintiff took a rule on Lartigue, to show cause why he should not pay over the amount received for plaintiff, or be committed for contempt.

Lartigue accepted service, and the same day filed an answer, excepting to the proceedings by rule, and answering over to the merits of the rule, admitted his receipt of $2,470 56 in Confederate notes, and producing Confederate notes to that amount, prayed that the plaintiff be ordered to

receive them in satisfaction of the rule. Whereupon, the plaintiff amended his rule so as to pray that Lartigue be ordered to pay over the amount in current funds.

Evidence was then offered by plaintiff and defendant, and after argument of counsel, the Judge decided that the tender in Court of Confederate notes made by the defendant in rule, was a compliance with the mandate of the Court.

Lartigue then filed an exception to what he calls the second rule, and the Judge a quô rendered another judgment sustaining the exception, on the ground that the object of the first rule had been different; that the proceeding by rule was irregular; that the plaintiff should have proceeded by an ordinary action, and the rule was dismissed.

Whereupon the plaintiff appealed.

The pleadings present the following points for the consideration and decision of the appellate Court :

1. Was the act of placing the amount of plaintiff's claim, with interest, etc., in Confederate notes in the hands of the Clerk, a legal tender of the amount due ?

The Code of Practice, Article 407, defines a tender of money due to be "one made to the creditor himself, or at his actual or chosen domicil, by the debtor or his agent, in the presence of two witnesses residing in the place, by tendering to such creditor the sum which is due him, with the interest, and such costs as he may have incurred, and exhibiting such sum to him in the presence of such witnesses in the current coin of the United States."

It was then not a legal tender of the amount due.

2. Was it a payment of the debt to the plaintiff, such as would of itself bind the latter, and discharge the debt ? The Supreme Court held in 14 An. 328 : "The deposit of the money in Court with the Clerk was not a payment to the creditor, nor to any person authorized by him, or by a Court or by law, to receive it for him." C. C. 2136.

3. Was it a deposit of so much money with the Clerk, subject to the order of the plaintiff, which the latter by accepting from the Clerk, could convert into a valid payment, and discharge of the debt, as decided in *Alexandrie* v. *Saloy*, 14 An. 328, quoted above ?

This depends directly upon the judicial determination of the question, whether Confederate Treasury notes were or were not money.

And upon the decision of this question hinges the whole case.

If Confederate notes, at that time at par of gold and silver, cannot be recognized as having ever possessed the attributes of money, because they were the issues of a government which existed only in the imaginations of its supporters, (and this reasoning would have denied any value even to gold and silver coinage, had it borne the impress of the Confederate Government), then we are entitled to regard the delivery of these notes by Trufant to Lartigue, as a transfer by the former gentleman to the lat-

ter, of certain curious engravings, in which we have no interest, and to which we have no claim, as the defendants owed us money, and not numismatic or art curiosities.

But if they had the quality of money, for what purpose were they received by the Clerk ?

Did he receive them as a simple deposit, as he now contends, entailing no responsibility on him, and which he was only obliged to deliver to the creditor, or return to the debtor in kind ? The whole record negatives the idea. On the contrary, the delivery of the notes was intended by the defendants as a payment of their debt, the Clerk received them as a payment of the debt, and it would have been so accepted by the plaintiff had they been turned over to him by Lartigue at the time. All parties concerned treated the transaction as a payment, and unless the Court should decide that the notes were absolutely void of any character as money, we think the transaction must be so regarded. See *Gwin* v. *Breedlove*, 2 How. p. 28.

Did he receive these notes in his capacity of Clerk of the Court, or did he act as our agent in doing so ?

No order of Court authorized his reception of these notes as Clerk of the Court. Had he a general power as Clerk to receive them, not as a deposit, as we have attempted above to show, but in payment of plaintiff's claim ? As Clerk, he could only receive them as a deposit; if he intended to receive them, and did receive them as a payment, his office could not prevent him from assuming, nor shield him from the consequences of the assumption of the character of plaintiff's agent.

If he assumed the quality of an agent, was he not bound under the provisions of the Code, promptly to have notified the plaintiff of his acceptance of these notes, and to have offered to transfer them to him, or in default thereof, to incur the risk of their depreciation ?

On this point see Hen. Dig. Art. Payment 4, No. 16; C. C. 2163—5; C. P. 404, 407, 412, et seq.; 12 An. 267.

*P. Soule & L. Charvet, and H. Train and H. R. Grandmont, for defendant.*—The Court below decided on the trial of the second rule, that a summary proceeding by rule, was not legal and proper; that the party should proceed by an ordinary action, in order to make defendant liable by judgment for the amount claimed.

From that judgment the plaintiff appealed.

The foregoing brief statement shows the case in its true light. The Clerk of the Court received the amount in dispute in Confederate notes. He produced it as he received it. Then he is called upon in June, 1865, to pay in United States Treasury notes what he received in Confederate notes on the 24th of March, 1862.

We maintain that the exceptions taken by him are well founded. We now come to the law applicable to the case.

31

First exception : See case of *Buel* v. *New York Steamer et al.*, 17 La. 541.

Second exception :

The right to summary process cannot be extended beyond the cases expressly authorized by law. C. P., Arts. 98, 170, 754, 755, 756, 757; *Baker et al.* v. *Doane et al.*, 3 An. p. 434; *Austin, Sumner & Co.* v. *A. T. Dunbar*, 12 An. p. 182; *Nolan's Heirs* v. *Louisa J. Taylor*, 12 An. p. 201; *Copley* v. *Conine*, 3 An. p. 206.

There is no warrant in the law for the mode of proceeding adopted by the plaintiff and appellant. His remedy was by an action. The only proceeding which ought to be followed is that alone which conforms to the law of actions. The defendant has a right to have the issue tried by a jury. That right should not be cut off by the resort to summary process, under the pretence that the proceeding is incident to the suit between the original parties, in which light it cannot properly be viewed. The appellee was not a party to that suit.

Third exception :

See case of *J. Irwin* v. *J. Kinney*, 1 Rob. p. 217. The exceptions were properly and legally taken, and decided by the Court below. The appellee cannot but be confident that the judgment appealed from will be affirmed.

HOWELL, J.   In November, 1861, plaintiff brought suit against defendants, for $2,332 76, in the Second Judicial District Court for the Parish of Plaquemines, and obtained a sequestration of their property, which was set aside upon their furnishing a release bond. No further proceedings appear until 19th June, 1865, when a rule was taken by plaintiff on the Clerk of said Court, to compel him to "pay over the moneys received for plaintiff in this case or be committed for contempt of Court;" to which the Clerk on the 20th same month excepted as to form of proceeding, and answered, admitting having received in March, 1862, the sum of $2,470, in Confederate notes from defendants as a deposit for plaintiff. On the same day the plaintiff filed another rule on the Clerk to " show cause instanter, why he should not pay the amount of the money collected by him in current funds, he having kept the Confederate notes in his possession, without having deposited them in bank or complied with the law, and having assumed to pay and having really paid some portion in current funds, or in default to be committed for contempt of Court." On the same day (the 20th) the first rule was tried and set aside, on the ground that the defendant therein had "complied with the mandate of the Court, in producing into Court the amount claimed and received by him in Confederate notes, and deposited by him in the safe of the Clerk's office." Thereupon, on the same day the Clerk excepted to the second rule, on the grounds that another rule had been taken for the same object between the same parties, and decided in his favor; that plaintiff cannot

proceed by rule, but must bring a direct action; and that if a rule be allowed, he is entitled to at least three days to answer. These exceptions were tried on the next day, the 21st, and that to the form of proceeding was sustained, from the judgment on this rule, and plaintiff appealed.

The only question to be determined is, whether or not the Court erred in sustaining the exceptions to the second rule.

There were evidently *two rules*, tried separately and on different days, and both, in our opinion, had the same object in view, to wit : to compel the Clerk to pay to plaintiff the amount of money alleged to have been received by him for plaintiff. The addition in the second rule of the words, "in current funds," was mere surplusage; for if the Clerk were really liable to pay plaintiff money, he could only have been condemned to pay the amount in dollars.

In the case of *Buel* v. *New York Steamer*, 17 L. 541, it was held that a second rule cannot be entertained, when one to the same purport and effect has been taken, acted upon and decided, unless for a new cause, *arising after the first had been decided.*

We think it clear that after disposing of the first rule in this instance, the second could not be entertained, and that the first ground of exception was well taken. Such a mode of proceeding would result in vexatious and interminable litigation.

If, however, the second rule should be considered as different from the first, because of the alleged assumption to pay in current funds, then the second ground of exception should be maintained, as there is no suit pending between these parties in which a rule could be taken, and plaintiff could enforce such a demand only in an ordinary action by petition and citation.

Judgment affirmed, with costs.